J-S21033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAMON COVINGTON | |
| Appellant | No. 1908 EDA 2013 |

Appeal from the PCRA Order February 27, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003053-2010

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                     **FILED SEPTEMBER 26, 2014**

Damon Covington appeals *nunc pro tunc* from the order entered on February 27, 2013, in the Philadelphia Court of Common Pleas dismissing his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1] Covington seeks relief from the judgment of sentence of a term five to ten years' imprisonment imposed on January 14, 2011, after he was convicted of simple assault and multiple violations of the Uniform Firearms Act.  On appeal, Covington raises the following three issues:  (1) counsel was ineffective for failing to object to bad character evidence admitted against Covington at trial; (2) counsel was ineffective for agreeing to a constructive

_____

[1]  42 Pa.C.S. §§ 9541-9546.

possession charge to the jury; and (3) the PCRA court erred in failing to hold an evidentiary hearing. Based on the following, we affirm.

The underlying convictions stem from a December 31, 2009, incident, in which Covington struck his landlord in the eye with a gun. On October 29, 2010, a jury convicted Covington of simple assault, persons not to possess firearms, carrying a firearm on a public street, and firearms not be carried without a license.[2] On January 24, 2011, the trial court sentenced him to a term of five to ten years' incarceration for the persons not to possess firearms offense. The court also imposed an aggregate term of seven years' probation for the remaining crimes. Covington filed a post-sentence motion, which was denied on February 1, 2011. He then filed a notice of appeal from the judgment of sentence.[3] On December 23, 2011, this Court entered an order, indicating that the direct appeal had been discontinued and withdrawn at the request of Covington's counsel.

On March 7, 2012, Covington filed a counseled PCRA petition. The Commonwealth filed a motion to dismiss the PCRA petition on October 5, 2012. The PCRA court entered a Pennsylvania Rule of Criminal Procedure

---

[2] 18 Pa.C.S. §§ 2701(a), 6105(a)(1), 6108, and 6106(a)(1), respectively. The jury found Covington not guilty of aggravated assault and possession of an instrument of crime. A charge of recklessly endangering another person, 18 Pa.C.S. § 2705, was *nolle prossed*.

[3] During this time, appointed counsel was relieved and Covington retained private counsel.

907 notice of intent to dismiss without a hearing on January 17, 2013. Counsel for Covington filed two responses to the Rule 907 notice on February 8, 2013, and February 15, 2013. By order of the court entered on February 27, 2013, Covington's PCRA petition was dismissed.

Subsequently, on May 24, 2013, Covington filed a motion to reinstate PCRA appellate rights *nunc pro tunc*.[4] On June 11, 2013, the PCRA court entered an order, granting Covington's motion.[5] This appeal followed.[6]

_____

[4] In the motion, counsel indicated that he had informed Covington that he would file a notice of appeal from the dismissal of his PCRA petition but due to an "unfortunate oversight," counsel failed to file the notice. **See** Covington's Motion to Reinstate Appellate Rights *Nunc Pro Tunc*, 5/24/2013, at 2.

[5] We note that, generally, any request for post-conviction collateral relief will be treated as a PCRA petition, regardless of how an appellant captions the motion. **See** 42 Pa.C.S. § 9542; **Commonwealth v. Kubis**, 808 A.2d 196, 199 (Pa. Super. 2002), *appeal denied*, 813 A.2d 839 (Pa. 2002). "[A]ll requests for reinstatement of appellate rights, including PCRA appellate rights, must meet the timeliness requirements of the PCRA." **Commonwealth v. Fairiror**, 809 A.2d 396, 397 (Pa. Super. 2002) (emphasis added), *appeal denied*, 827 A.2d 429 (Pa. 2003). Under the PCRA, a second or subsequent petition "must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), is met." **Commonwealth v. Harris**, 972 A.2d 1196, 1200 (Pa. Super. 2009) (footnote omitted), *appeal denied*, 982 A.2d 1227 (Pa. 2009). Moreover, the exceptions must be pled within 60 days of the date the claim could have been presented. **See** 42 Pa.C.S. § 9545(b)(2). Here, Covington's judgment of sentence became final after this Court entered an order, on December 23, 2011, indicating that the direct appeal had been discontinued and withdrawn at the request of Covington's counsel. Consequently, the deadline for filing a PCRA petition was one year thereafter on December 23, 2012. The present petition, filed on May 24, 2013, therefore, was patently untimely. *(Footnote Continued Next Page)*

Covington raises the following issues in his brief:

1. Was trial counsel … ineffective for failing to object to impermissible bad character evidence admitted against [Covington] at trial?

2. Was trial counsel ineffective for agreeing to a constructive possession charge to the jury, where the Commonwealth did not even argue constructive possession at trial and such instruction served only to widen the scope of behavior from which the jury could infer [Covington]'s possession of the firearms in question?

3. Should the PCRA court have granted an evidentiary hearing where disputed issues of fact went unresolved; namely, whether trial counsel had any reasonable, strategic basis for his actions?

Covington's Brief at 4.

Our standard of "review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error."

---

*(Footnote Continued)* ————————

Nevertheless, Covington pled and proved the Section 9545(b)(1)(ii) exception based on counsel's failure to file his requested notice of appeal. **See Commonwealth v. Bennett**, 930 A.2d 1264 (Pa. 2007) (vacating the quash of a defendant's appeal seeking reinstatement of his appellate rights because the untimely appeal was the result of defendant's prior counsel's failure to file a brief in the initial PCRA appeal).

[6]  On June 12, 2013, counsel filed a motion to withdraw.  The PCRA court granted that motion on June 24, 2013, and appointed new PCRA counsel.

On July 11, 2013, the PCRA court ordered Covington to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Covington filed a concise statement on July 24, 2013.  The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 16, 2013.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted), *appeal denied*, 54 A.3d 347 (Pa. 2012).

Where, as here, Covington's first two claims challenge the ineffectiveness of counsel, our review is well-settled:

> We begin our analysis of ineffectiveness claims with the presumption that counsel is effective. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Commonwealth v. Spotz*, 18 A.3d 244, 259-260 (Pa. 2011) (internal citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012) (citations omitted).

In Covington's first argument, he claims trial counsel was ineffective for failing to object to prior bad acts evidence. Covington states that during the victim Bruce Wilkins's direct examination, "the Commonwealth elicited from [Wilkins] that [Covington] was a problem tenant because of his drinking, disrespectful attitude, and refusal to follow rules." Covington's Brief at 11, *citing* N.T., 10/27/2010, at 47. Covington argues that the failure

to object to this testimony constituted ineffective assistance of counsel. Moreover, Covington argues the PCRA court erred in finding that the *res gestae* exception applied to the matter because the exception "is only properly invoked when the bad acts are part of the *same transaction* involving the charged crime." Covington's Brief at 12 (italics in original), *citing* **Commonwealth v. Brown**, 52 A.3d 320, 332 (Pa. Super. 2012), *appeal denied*, 62 A.3d 377 (Pa. 2013). Covington states his claim has arguable merit because:

> [his] alleged prior bad behavior *vis a vis* his use of alcohol, disobeying rules, and disrespectfulness were not part of the same transaction that involved the crime he was charged with. Rather, Wilkins'[s] testimony regarding these supposed bad acts related to a time far remote from when the instant crime was alleged to have happened.

*Id.* (citation omitted). Further, he contends there was no reasonable basis for counsel's failure to object to this testimony and he was severely prejudiced by "this character assassination" because it provided the jury "with an improper basis from which to infer that [he] was more likely than not to have committed the crimes he was charged with." *Id.* at 13.

We are guided by the following principles:

> Rulings on the admissibility of evidence are within the discretion of the trial judge, and such rulings form no basis for a grant of appellate relief absent an abuse of discretion. While it is true that evidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence may be admissible where relevant for another purpose. Examples of other such relevant purposes include showing

the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, or to establish identity. ... [T]he evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. Of course, in addition to the relevance requirement, any ruling on the admissibility of evidence is subject to the probative value / prejudicial effect balancing that attends all evidentiary rulings.

*Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406, 419 (Pa. 2008) (internal citations omitted).

The ban on prior bad acts evidence, and the lion's share of associated exceptions noted in *Powell*, *supra*, are set forth in Pa.R.E. 404(b). The *res gestae* or "history of the case" exception, however, does not spring from Pa.R.E. 404. It is a:

"special circumstance[,]" [one] where evidence of other crimes may be relevant and admissible ... where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Commonwealth v. Murphy*, 346 Pa.Super. 438, 499 A.2d 1080, 1082 (1985), *quoting* **Commonwealth v. Williams**, 307 Pa. 134, 148, 160 A. 602, 607 (1932). This special circumstance, sometimes referred to as the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its **immediate** context of happenings **near in time and place**."

*Commonwealth v. Lark*, 518 Pa. 290, 303, 543 A.2d 491, 497 (1988) (emphasis added).

*Commonwealth v. Green*, 76 A.3d 575, 583-584 (Pa. Super. 2013) (footnote omitted), *appeal denied*, 87 A.3d 318 (Pa. 2014).

By way of background, Wilkins's contested testimony is as follows:

Q. After you agreed to take Mr. Covington into your home, to rent a room to Mr. Covington, how long after the conversation with his mother did he come into your house?

A. I believe it was immediately.

…

Q. And at that time, sir, when he had moved into your home, tell the ladies and gentlemen of the jury how were the first days.

A. First days [were] okay.

Q. What happened next?

A. Then as we went on and on and on, it -- he started getting more controlling, thinking that he can do what he want to do, and disrespectful.

Q. When you say "disrespectful," tell the ladies and gentlemen of the jury what you consider his activities to be that were disrespectful to you.

A. Not obeying my rules, drinking, just being disrespectful. Like, you know, no one can tell him nothing but his mother.

Q. Did he bring people into your home?

A. Yeah.

Q. Who?

A. His girlfriends.

Q. Were there problems when he brought them into your home?

[Defense counsel]: Objection, leading.

THE COURT: Sustained.

[The Commonwealth]. What, if anything, happened when he brought the girlfriends into your home? What, if anything, had happened?

A. I would have to get involved in his relationships because he would like to think he owned the girls. Then one of --

[Defense counsel]: Objection.

THE COURT: Sustained.

[The Commonwealth]: Did you actually see him do anything in terms of you said you had to break –

[Defense counsel]: Objection, Judge.

THE COURT: Wait.

[Defense counsel]: What's the relevance of this, Judge?

THE COURT: I'm not quite sure.

[The Commonwealth]: I think it becomes relevant.

Judge, I'll see you at sidebar, if you want the relevance.

THE COURT: Just ask him a question without suggesting an answer.

[The Commonwealth]: I will.

[Defense counsel]: Judge, isn't my client on trial for events that took place December 31st?

THE COURT: Some background might be appropriate.

[The Commonwealth]: And I think some background --

THE COURT: I think some background is appropriate, not much. Let's get to the point.

[The Commonwealth]. Is part of what you're saying -- is that what you mean by disrespectful?

A. Yeah.

Q. At some point, sir, did you make up your mind that this could no longer continue?

A. Yes.

Q. Did you address it with Mr. Covington?

A. Yes.

Q. What, if anything, did you tell him at that point?

A. I told him the things that he's doing in my property I don't appreciate it and at a certain time that he would have to leave and find himself a place to go.

N.T., 10/27/2010, at 46-50.

The PCRA court found counsel was not ineffective for failing to object to the prior bad acts testimony based on the following:

> [Covington] claims his trial counsel failed to object to [the victim]'s testimony detailing [Covington]'s drinking, "disrespectful," and "controlling" behavior. Contrary to [Covington]'s assertion, his counsel was not ineffective for failing to object to permissible prior act evidence explaining the deterioration of the informal landlord-tenant relationship between the complainant and [Covington] preceding the assault. *See* N.T. 10/27/10 at 49 (court expressing appropriateness of limited background information).

> Prior to the assault, [Covington] rented a room in the complainant's home. *Id.* at 47. On the evening in question, [Covington] made an unapproved visit seeking to retrieve some residual personal belongings. *Id.* at 52. The assault followed the complainant's decision to refuse [Covington], who sounded intoxicated, entry into his residence. *Id.* The complainant's account of [Covington]'s prior conduct formed the sequence of events leading to the dissolution of their living arrangement and subsequent assault. Specifically, the complainant indicated that [Covington] did not obey his rules, drank, and was disrespectful. *Id.* at 47.

> Additionally, [Covington]'s behavior as the complainant's informal tenant was permissible to demonstrate [Covington]'s aggressive demeanor immediately preceding the assault.

- 10 -

> Exploring the unsavory dynamic of their relationship formed the natural development of the facts and therefore did not constitute impermissible character evidence. ***See Commonwealth v. Dillon***, 925 A.2d 131, 137 (Pa. 2007) (citing *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of events surrounding a crime).

PCRA Court Opinion, 8/16/2013, at 3-4.

We agree with the PCRA court's rationale. Wilkins's statements about Covington being disobedient, drunk, and disrespectful were not offered for the truth of the matter asserted. Rather, the evidence was offered "to complete the story of the crime," by explaining the natural development of Wilkins's and Covington's acrimonious relationship, which led to the assault. ***See Lark***, 543 A.2d at 497. Likewise, while Wilkins did not detail specific dates, and discussed the landlord-tenant relationship as lasting a year, his testimony demonstrated "its immediate context of happenings near in time and place" to the attack. ***Id.*** As such, this evidence was relevant, probative, and formed an integral part of the case history.

Moreover, Covington's reliance on ***Brown***, ***supra***, is misplaced as that case is distinguishable from the present matter. There, the defendant was charged with violating 35 P.S. § 780-113(a)(14), relating to his prescription of drugs to six patients between June 1, 2002 and June 30, 2004 while he was a licensed practicing physician. ***Brown***, 52 A.3d at 321. The trial court permitted the Commonwealth to introduce evidence of bad acts occurring in and before 1984 under the common law *res gestae* exception; specifically,

that in the late 1970's and early 1980's, the defendant fraudulently obtained his medical degree and license. *Id.* at 322. On appeal, a panel of this Court reversed the trial court's decision. The Court explained at length Pennsylvania Supreme Court precedence with respect to the exception. As pointed out by Covington in this matter, the *Brown* Court then set forth that "where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception)[,]" the evidence may be admissible. *Id*. at 326. The Court also outlined the balancing test for determining whether the probative value of the *res gestae* history evidence outweighs its prejudicial impact, stating:

> courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility."

*Id*. Applying the test, the *Brown* Court determined:

> [T]he alleged bad acts are so far removed from the charged crimes that it strains credulity to consider them as a natural part of the history, chain, or sequence of events in the case when considering the exception in light of its history. The bad acts do not establish [the defendant]'s relationship with his patients, nor are they part of the same transaction or interwoven in such a manner that failing to elucidate the jury to the information would render the case unintelligible. The prior alleged crimes are dissimilar in kind and purpose to the drug crimes and have no direct connection to the events that transpired in 2002 through 2004.

*Id.* at 332.

Here, distinguishable from the facts in **Brown** and contrary to Covington's argument, Covington's alleged bad acts, as described by Wilkins, were not so far removed in time from the crimes charged to separate them from the natural history of the present case.[7] Moreover, as stated above, the bad acts shed light on the relationship between Covington and the victim, and supplemented the sequence of events. Accordingly, we conclude Covington's first issue lacks arguable merit, and therefore, the PCRA court properly found counsel was not ineffective for failing to object to the prior bad acts evidence.

Next, Covington argues that counsel was ineffective for failing to object to the jury charge on constructive possession. Specifically, he contends: "The Commonwealth's theory of the case was that [Covington] actually possessed a firearm and used it to strike Wilkins in the face. Though firearms were recovered from the vehicle that [Covington] drove on the night in question, the Commonwealth never argued or implied that [he] constructively possessed those firearms." Covington's Brief at 14. Moreover, Covington states the jury "struggled with whether [he] did in fact possess firearms at all, as evinced by its request for the court to re-define 'possession.'" **Id.** He asserts counsel was ineffective in agreeing to the

_____

[7] Furthermore, we note that counsel did object, and the court sustained the objection, when the Commonwealth tried to introduce evidence related to Covington's interactions with paramours because this evidence was not relevant to the matter at hand. N.T., 10/27/2010, at 48.

court's suggestion of the doctrine of constructive possession because (1) the Commonwealth had not argued constructive possession in its case-in-chief or during closing argument, and (2) the doctrine enlarges the scope of possession to encompass defendants who are not arrested for actual possession of contraband and therefore, counsel expanded the circumstances from which the jury could infer his guilt.

By way of background, Wilkins testified that after Covington hit him in the eye with a hard object, Wilkins observed Covington wrap something up in a white towel and put the item in the trunk of a white Acura. N.T., 10/27/2010, at 60, 64. Wilkins also stated that he saw Covington put a gun in the trunk. *Id.* Covington was eventually pulled over in the white Acura, with a passenger, and arrested. Police searched the car and seized a black .9 mm Taurus PT111 and a black and brown .32 caliber Duetsche Worker. *Id.* at 195. During deliberations, the jury asked the court to repeat the key elements of the charges, particularly the "possession" element of the **PIC offense**. Additionally, the jury inquired what constitutes simple assault and whether possession of an instrument of crime suggests it was used in a crime. N.T., 10/28/2010, at 79. The court indicated that as to the "possession" element of the PIC offense, it "wanted to add something more about possession that we've taken from the charge." *Id.* at 82. Both counsel agreed the court could instruct the jury on constructive possession. *Id.* at 82-83. The court then reread all of the elements for the crimes

charged. *Id.* at 85-91. With respect to the PIC charge, the court stated, in pertinent part:

> First, that the defendant possessed a certain item; that is, a firearm. For a person to possess an item, he or she must have the power to control and the intent to control that item.
>
> And second, that the item was an instrument of crime. An instrument of crime is, A, anything specially made for criminal use; or B, anything specially adapted for criminal use; or C, anything that is used for criminal purposes and possessed by the defendant at the time of the alleged offense under circumstances not manifestly appropriate for lawful uses it may have.
>
> …
>
> The Commonwealth has charged here that the crime the defendant intended to commit with the instrument alleged was aggravated assault.
>
> Possession defined. Possession means first what it means in ordinary usage; someone is knowingly holding, carrying, or otherwise directly controlling the possession of an item. A person can be guilty of possessing an item even when he or she is not holding it, touching it, or in same area as the item. That type of possession is what the law calls constructive possession.
>
> For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control the item and the power to control the item.
>
> In determining whether or not the defendant had possession of a firearm, you should consider evidence of all facts and circumstances that may shed light on the question of whether the defendant had the intent to control and the power to control it.

*Id.* at 89-91.

"When the alleged error in a jury instruction underlies an ineffective assistance of counsel claim, we must apply the standard for ineffective

assistance." ***Commonwealth v. Battle***, 883 A.2d 641, 645 (Pa. Super. 2005), *abrogated on other grounds by*, ***Commonwealth v. Jette***, 23 A.3d 1032 (Pa. 2011). Moreover, we note the following:

> We review a jury charge in its entirety to determine if it "clearly, adequately and accurately reflects the law." ***Commonwealth v. Johnson***, 572 Pa. 283, 313, 815 A.2d 563, 580 (2002). The trial judge has broad discretion to choose the wording by which he explains legal concepts to the jury. ***Id.*** We therefore do not "rigidly inspect a jury charge, finding reversible error for every technical inaccuracy … rather [we] evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." ***Commonwealth v. Jones***, 2004 PA Super 331, 858 A.2d 1198, 1200 (Pa. Super. 2004) (*quoting* ***Commonwealth v. Thompson***, 543 Pa. 634, 639, 674 A.2d 217, 218-19 (1996)).

***Battle***, 883 A.2d at 645.

As a prefatory matter, we note the court specifically charged the jury on constructive possession as to the aggravated assault and PIC charges. The jury acquitted Covington of those offenses. Therefore, he has not demonstrated he suffered any prejudice as a result of counsel's failure to object to the constructive possession jury instruction. ***See Spotz***, ***supra***.

Moreover, even if one could infer that the constructive possession instruction was imputed to the remaining charges, the PCRA court properly found the following:

> Because the jury was properly instructed on the concept of constructive possession, counsel was not ineffective for declining to raise a meritless objection.
>
> After reviewing the jury's question seeking further guidance regarding the term 'possession,' the court's response incorporated a portion of Standard Jury Instruction 16.02(b)A

- 16 -

which, in part, provides a definition of possessing an item. The section of the charge concerning 'constructive possession' was found applicable in light of the testimony elicited at trial. Specifically, evidence that [Covington] stashed a firearm into the trunk of the vehicle in which he was a passenger supported a determination that his possession of the firearm became constructive at that point in time. The prosecutor's decision not to argue constructive possession did not negate the concept's applicability.

      Furthermore, regardless of counsel's position regarding the jury instruction, the court was inclined to provide a broad definition of possession in responding to the jury's question. **See** N.T. 10/28/10 at 82 ("Yeah, but I wanted to add something more about possession that we've taken from the charge ...."). Therefore, [Covington] cannot demonstrate trial counsel's ineffectiveness in failing to object to a definition that was appropriate under the circumstances.

PCRA Court Opinion, 8/16/2013, at 5-6 (footnote omitted). As the PCRA court correctly disposed of this issue, we conclude there is no arguable merit to Covington's claim of ineffective assistance of counsel based on a failure to object to the jury instruction. Accordingly, his second issue fails.

In Covington's final argument, he asserts the PCRA court erred by not granting an evidentiary hearing pursuant to Pennsylvania Rule of Criminal Procedure 909(B) because genuine issues of material fact exist as to his claims regarding whether counsel's strategies were reasonable. We note the following:

An evidentiary hearing is not mandatory for all claims raised in a PCRA petition and [an a]ppellant may not avoid the requirement of setting forth evidence sufficient to establish an issue of material fact.... **See also** Pa.R.Crim.P. 909(B) (providing that the PCRA court need only grant a hearing on those issues for which a petitioner raises an issue of material fact).

***Commonwealth v. Clark***, 961 A.2d 80, 94 (Pa. 2008), *cert. denied*, 558 U.S. 1082 (2009). Because Covington failed to raise genuine issues of material fact with respect his ineffective assistance of counsel claims, he was not entitled to a hearing on these issues and the PCRA court committed no error in dismissing the claim. Therefore, his final argument fails.

For the foregoing reasons, we conclude the court did not err in denying Covington's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014